# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### CINCINNATI DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel.<br>MARK ELLIOTT, | : | Case No. **1 10CV392** |
| | : | Judge **J. BARRETT** |
| Plaintiff/Relator | : | |
| | : | **FILED UNDER SEAL** |
| v. | : | **WITH JURY TRIAL** |
| | : | **DEMAND** |
| THE BRICKMAN<br>GROUP LTD., LLC,<br>18227 Flower Hill Way<br>Suite D<br>Gaithersburg, MD 20879 | : | **RECEIVED** |
| | : | JUN 1 6 2010 |
| Defendant | : | **JAMES BONINI, Clerk**<br>CINCINNATI, OHIO |

## QUI TAM COMPLAINT

The United States of America *ex rel.* Mark Elliott states as follows for their

Complaint against Defendant The Brickman Group Ltd., LLC.,:

## I.    JURISDICTION AND VENUE

1.    This is a civil action brought by the United States of America and Relator-

Plaintiff Mark Elliott to redress violations of the False Claims Act, 31

U.S.C. §§ 3729, *et seq.*, which provides that the United States shall have

exclusive jurisdiction of actions brought under the Act.

2.    This Court has jurisdiction over the subject matter of this action pursuant

to:  (i) 31 U.S.C. § 3732(a) (False Claims Act); (ii) 28 U.S.C. § 1331

(Federal Question); and (iii) 28 U.S.C. § 1345 (United States as plaintiff).

An act proscribed by Section 3729 occurred in the Southern District of

Ohio.

3.      This suit is not based upon prior public disclosures of allegations or
transactions in a criminal, civil, or administrative hearing, lawsuit or
investigation or in a Government Accounting Office or Auditor General's
report, hearing, audit, or investigation, or from the news media.

4.      This Court is the proper venue for this action under 31 U.S.C. § 3732(a),
because: (i) Defendant transacts business in this district and did so at all
times relevant to this Complaint, and (ii) upon information and belief,
Defendant committed acts proscribed by 28 U.S.C. § 3729, *et seq*.

5.      Before filing this Complaint, Plaintiff served a copy of same upon the
United States, together with a written disclosure statement setting forth
and enclosing all material evidence and information he possesses, pursuant
to the requirements of 31 U.S.C. § 3730(b)(2).

6.      Plaintiff has complied with all other conditions precedent to bringing this
action. To the extent that there has been a public disclosure unknown to
Plaintiff, Mark Elliott, is an original source under 31 U.S.C. § 3730(e)(4).

7.      Plaintiff has direct and independent knowledge of the information on
which any allegations herein are based, and has voluntarily provided such
information to the Government before filing this action.

## II.    THE PARTIES

8.      Plaintiff incorporates by reference each and every allegation in the
paragraphs above.

9.      The United States of America is the plaintiff for whom recovery is sought
for violations of the False Claims Act.

10.　　Plaintiff-Relator is a citizen of the Commonwealth of Kentucky, and was at all times relevant to this Complaint.  Plaintiff was an employee of Defendant from on or about November 2004 until on or about January 21, 2010.

11.　　Defendant is a foreign limited liability company registered to do business in Ohio.  Its principal office is located in Gaithersburg, Maryland 20879. Defendant is a large, nationwide commercial landscape firm with multiple branches, including:  landscape maintenance, landscape enhancements, design/build and installation, snow and ice management, irrigation, tree care, and sports turf.  Defendant performs multi-million dollar landscape contracts with large real estate firms, including, but not limited to, Duke Realty, who also have multi-million dollar federal government real estate building contracts, and Defendant had actual knowledge of these federal government real estate dealings.

12.　　Defendant's registered agent for service is:  CT Corporation System, 1300 E. Ninth Street, Cleveland, Ohio 44114.

## III.　FACTUAL BACKGROUND

13.　　Plaintiff incorporates by reference each and every allegation in the paragraphs above.

14.　　Plaintiff was hired by Defendant in November 2004 and served in the capacity of branch manager and regional sales manager/business development associate.  During Plaintiff's first two and one half years

with Defendant, he served under the direct leadership of Mark Davis, the regional manager, as branch manager.

15.　As branch manager, Plaintiff was responsible for overseeing the operational, financial, and administrative activities involved in the multi-million dollar landscape maintenance branch, whose largest client within Plaintiff's branch was Duke Realty.

16.　During the two and one half years under Mark Davis, Davis, as Defendant's agent, directed that Defendant's employees not perform or drastically reduce specific contractual obligations related to landscape management services for Duke Realty which resulted in significant financial gains for Defendant. Davis directed that employees not perform or drastically reduce activities including, but not limited to:

　　i)　　Applications of fertilizer and associated broadleaf and pre-emergent treatments and dormant fertilizer;

　　ii)　　Shrub and tree fertilizations;

　　iii)　　Pre-emergent applications;

　　iv)　　Dormant oil and IMP applications;

　　v)　　Policing of properties;

　　vi)　　Mulch applications;

　　vii)　　Pruning activities;

　　viii)　　Spring operations and edging activities; and

　　ix)　　Flower installations for summer and fall color.

17.     Furthermore, as regional manager, Mark Davis, as Defendant's agent, annually, during the budget preparation, directed that management delete specific line items within the estimates that Defendant had contractually agreed to perform for their largest client, Duke Realty, without their knowledge or authorization.

18.     Defendant's operating software system ("COINS") assigned each real estate property within the Duke Realty portfolio a specific estimated cost, and within the estimated costs were specific services of which Defendant were contractually obligated to supply.  These estimated costs included labor costs and hard material costs.

19.     Defendant purposely removed these specific line item costs from COINS without the knowledge of Duke Realty.

20.     During one particular annual budget preparation period, Mr. Davis, as Defendant's agent, directed Plaintiff, Rich Amaya, Rich Martell, Kirell Senoff, and Mike Cooper to remove over 4,000 hours of contractually obligated services from the Duke Realty estimates in order to meet the "bottom line" profit margin he had been directed to meet during the budgeting process by Defendant's lead management.  According to Mr. Davis, this budget directive was ordered by Jeff Herold, Defendant's chief operating officer.

21.     In following with Mr. Davis' instructions, Plaintiff, Amaya, Martell, and Senoff were given spreadsheets from Mike Cooper, the regional controller, and took positions at their respective computer stations, where

they spent several hours removing or significantly reducing the directed 4,000 hours of services from the estimates.

22.   Due to the above mentioned removals and reductions, Defendant's agents determined that the services involved were either not performed or were reduced.  The amount of services billed to Duke Realty was never changed, despite the removals and reductions of services.  Therefore, the original estimate contract price was reincorporated back into the body of the overall estimate.

23.   At all times relevant to this Complaint, Duke Realty was set on an electronic billing and payment process with Defendant.  Each month, Mike Cooper would send an electronic billing statement and notification to Duke Realty's financial processing center in Indianapolis, Indiana, which automatically triggered Duke Realty to submit an electronic payment to Defendant's financial center located in Langhorne, Pennsylvania.  Duke Realty was never made aware of the deletion and reductions in services and, therefore, paid for services which were either not fulfilled or not completely fulfilled.  Defendant and its agents never displayed an intention to inform Duke Realty of the deletion or reduction in services.

24.   The actions listed in ¶ 20 through ¶ 23 were repeated each year during Plaintiff's tenure under Mark Davis.

25.   Additionally, Defendant performed "production reviews" annually, whereby management, including Plaintiff, assessed each client property

based on its performance over the past year according to established COINS standards and adjusted services accordingly. These minor adjustments were made to identify efficient service practices and assisted management in operational planning and determining the amount of equipment, workers, and materials required to provide each service. The above mentioned deletion and reduction of services were made in direct contradiction to the results of annual "production reviews."

26.     Further, Mr. Davis, as Defendant's agent, directed "work orders," activities which were performed by Defendant during the course of the year which were in addition to the original contractual obligations to a client, which were manipulated to meet bottom line profit margins. These work orders included, but were not limited to, additional installations, debris removal, enhancements to properties, and any services which required Defendant to send special work crews to properties for specific activities.

27.     Plaintiff, by information and belief, is aware of several instances where a substantial amount of landscape material was purchased for a work order activity, and paid for accordingly by Duke Realty, and after completion of the activity, large amounts remained in excess. Defendant would return the excess material to the specific branch and eventually resell it at on or about a 200% profit, without Duke Realty's knowledge.

28.     Among the above mentioned work order activities, snow removal was the most profitable for Defendant's branches. Defendant's companywide

acceptable profit margin based on subcontractor-performed snow removal

services was a 20% markup relative to the original bill that the

subcontractor submitted to Defendant's branches. The accepted practice

in the case of Duke Realty, according to Defendant and their agents'

directives, was a 50%-80% markup relative to the subcontractor's bill.

29.    Plaintiff and other members of management were repeatedly informed that

their bonuses relied on how much they could profit from clients on snow

removal billing, and also they were instructed to "use their thumbs" when

billing for snow removal services.

30.    Every year during Plaintiff's tenure with Defendant under Mr. Davis, large

quantities of hard material, such as bulk salt and bag salt, were added to

Duke Realty's snow removal bills without the material's use or request

from Duke Realty. Duke Realty would occasionally protest these snow

removal bills, thus, Defendant would eventually accept a reduced payment

from Duke Realty, which was still at a high profit margin above the work

performed and materials used.

31.    The federal properties defrauded by the Duke Realty billing practices

include, but are not limited to:  Ft. Campbell, Kentucky Military Base; the

Bureau of Worker's Compensation at Governor's Hill in Mason, Ohio; the

Ft. Drum, New York Army Base; and several industrial sites leased by the

Internal Revenue Service and co-run by Prologis and Defendant

Brickman. Further, the federal criminal investigation of this matter has

been referred to the Cincinnati Division of the Federal Bureau of

8

Investigation because the wires and mailings involved were generated from Defendant's offices located in the Southern District of Ohio (FBI File No. 196D-0).

32.   On or about the spring of 2007, Plaintiff was moved to a newly created position with Defendant which assigned Plaintiff to Defendant's division office under the title "Business Development Associate." Due to this reassignment, Plaintiff met with Chris Hayes, the divisional manager, and Gary Kuykendall, the divisional business director, and briefed them on Plaintiff's history with Brickman Group. During this meeting, Plaintiff informed Mr. Hayes and Mr. Kuykendall of Defendant's above mentioned fraudulent billing practices.

33.   Plaintiff was never informed on the progress of the investigation prompted by Plaintiff's disclosures, or consulted for additional information regarding these billing processes.

34.   On or about the summer of 2009, Plaintiff was reassigned to work under Mark Davis again as regional sales manager. During Plaintiff's tenure in this new position, he and Mr. Davis had multiple verbal arguments wherein Mr. Davis stated to Plaintiff that Davis knew of his conversations with Mr. Hayes and Mr. Kuykendall and that Plaintiff would "pay for that oversight" and Plaintiff's "days were counted."

35.   On or about early December 2009, Plaintiff approached Mr. Hayes and informed him of the conversation described in ¶ 34 of this Complaint, and requested reassignment. Mr. Hayes stated that he would be in contact with

Plaintiff later, when he determined where he could be reassigned.  Mr.

Hayes never contacted Plaintiff regarding his requested reassignment.

36.     Due to the verbal threat from Mark Davis and a written reprimand against

Plaintiff by Mr. Davis on or about January 20, 2010, Plaintiff submitted

his resignation under duress on or about January 21, 2010.

## IV.     CAUSES OF ACTION

### A.      VIOLATIONS OF THE FALSE CLAIMS ACT: 31 U.S.C. § 3729, *et seq.*

37.     Plaintiff incorporates by reference each and every allegation in the

paragraphs above.

38.     This Count is brought by Plaintiff Mark Elliott in the name of the United

States under the qui tam provisions of 31 U.S.C. § 3730 for Defendant's

violations of 31 U.S.C. § 3729.

39.     As described in this Qui Tam Complaint, Defendant, by and through its

officers, agents, and employees:  (i) knowingly presented or caused to be

presented, to an officer or employee of the United States Government a

false or fraudulent claim for payment or approval, and (ii) knowingly

made, caused to be made or used, a false record or statement material to

get a false or fraudulent claim paid or approved by the government.

40.     Defendant authorized and ratified all of the violations of the False Claims

Act committed by its various officers, agents, and employees.

41.     The amounts of the false or fraudulent claims to the United States were

material.

42.     The United States Government and the public have been damaged as a result of Defendant's violations of the False Claims Act.

43.     Plaintiff qualifies as a Qui Tam Plaintiff as he is an employee entitled to relief from retaliatory actions under 31 U.S.C. § 3730(h), because he was discriminated against and subsequently resigned under duress because of lawful acts done by Plaintiff in furtherance of an action protected under 31 U.S.C. § 3730(h).

## B.     FALSE CLAIMS ACT RETALIATION

44.     Plaintiff incorporates by reference each and every allegation in the paragraphs above.

45.     Plaintiff submitted his resignation under duress on or about January 21, 2010, from duress in retaliation for his actions in making allegations subject to the False Claims Act, for Brickman's belief that Plaintiff was assisting in a qui tam investigation, and/or for Brickman's belief that Plaintiff had, or would, file a qui tam action.

46.     Brickman forced Plaintiff's resignation in an effort to threaten, harass, and discriminate against him, in violation of 31 U.S.C. § 3730(h).

47.     Brickman's actions damaged Plaintiff in violation of 31 U.S.C. § 3730(h), in an amount to be determined at trial.

48.     Pursuant to 31 U.S.C. § 3730(h), Plaintiff is entitled to litigation costs and reasonable attorney fees incurred in the vindication of his reputation and in the pursuit of this retaliation claim, in addition to receiving damages for Brickman's retaliatory conduct.

11

## V.     JURY DEMAND

49.     Plaintiff requests a trial by jury on all claims.

**WHEREFORE**, Plaintiff Mark Elliott, on behalf of himself and the United States Government, prays:

(i)     That a judgment be entered against Defendant in the amount of the false claims paid;

(ii)     That the amount of such judgment be trebled pursuant to 31 U.S.C. § 3729(a);

(iii)     That a civil penalty in an amount not less than $5,000, nor more than $11,000, per violation be imposed upon Defendant;

(iv)      That judgment be entered against Defendant in favor of Relator Elliott for all of his recoverable damages as permitted by 31 U.S.C. § 3730(d) and (h);

(v)     That this Court award Relator the maximum recovery allowed under 31 U.S.C. § 3730(d);

(vi)     That Plaintiff recover such other relief as the Court deems just and proper; and

(vii)     That Plaintiff-Relator be granted a jury trial.

Respectfully submitted,

Charles T. Lester, Jr. (0017601)
5247 Madison Pike
Independence, KY 41051-7941
Phone: 859-363-1900  Fax: 859-363-1444
Email: clester@ericdeters.com
*Attorney for Plaintiff-Relator*